## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| WRIGHT-RYAN CONSTRUCTION, INC., ) | |
| *et al.*,                        ) | |
|                                  ) | |
| *Plaintiffs*                     ) | |
|                                  ) | |
| *v.*                             ) | *Civil No. 08-414-P-H* |
|                                  ) | |
| AIG COMMERCIAL INSURANCE          ) | |
| COMPANY OF CANADA,                ) | |
|                                  ) | |
| *Defendant*                      ) | |

### RECOMMENDED DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Both sides to this insurance coverage dispute have moved for summary judgment on all claims.  I recommend that the court grant the defendant's motion and deny that of the plaintiffs.

### I.  Summary Judgment Standards

### A.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party."  *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)).  "A fact is material if it has the potential of determining the outcome of the litigation."  *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to

1

support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

"This framework is not altered by the presence of cross-motions for summary judgment." *Cochran v. Quest Software, Inc*., 328 F.3d 1, 6 (1st Cir. 2003). "[T]he court must mull each motion separately, drawing inferences against each movant in turn." *Id*. (citation omitted); *see also, e.g., Wightman v. Springfield Terminal Ry. Co*., 100 F.3d 228, 230 (1st Cir. 1996) ("Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se*. Cross motions simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed. As always, we resolve all factual disputes and any competing, rational inferences in the light most favorable to the [nonmovant].") (citations omitted).

## B. Local Rule 56

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district.

*See* Loc. R. 56.  The moving party must first file a statement of material facts that it claims are not in dispute.  *See* Loc. R. 56(b).  Each fact must be set forth in a numbered paragraph and supported by a specific record citation.  *See id*.  The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]"  Loc. R. 56(c).  The nonmovant likewise must support each denial or qualification with an appropriate record citation.  *See id*.  The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation.  *See id*.  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation.  *See id*.

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(f).  In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id*.; *see also, e.g., Sánchez-Figueroa v. Banco Popular de P.R.*, 527 F.3d 209, 213-14 (1st Cir. 2008).

## II.  Factual Background

The parties' respective statements of material facts, submitted pursuant to this court's Local Rule 56, include the following undisputed material facts.

Defendant AIG Commercial Insurance Company of Canada ("AIG"), formerly known as Commerce & Industry Insurance Company of Canada, is an insurance company organized under the laws of Canada with a principal place of business in Canada.  Defendant/Counterclaim Plaintiff's Statement of Material Facts ("AIG SMF") (Docket No. 30) ¶ 1; Plaintiffs' Opposing Statement of Material Facts ("Plaintiffs' Responsive SMF") (Docket No. 35) ¶ 1.  Norgate Metal is a Canadian corporation with a principal place of business in Quebec, Canada.  *Id.* ¶ 3.  AIG's corporate predecessor issued a general liability policy to Norgate with effective dates from April 19, 2007, to April 19, 2008, with a per occurrence limit of $2 million (the "AIG policy").  *Id.* ¶ 2; Statement of Undisputed Material Facts in Support of Plaintiffs' Motion for Summary Judgment ("Plaintiffs' SMF") (Docket No. 28) ¶ 18; Defendant/Counterclaim Plaintiff's Response to Plaintiffs/Counterclaim Defendants' Statement of Material Facts ("AIG Responsive SMF") (Docket No. 37) ¶ 18.

Plaintiff Wright-Ryan Construction, Inc. ("Wright-Ryan") is a Maine construction company that was the general contractor for a project at the University of Southern Maine ("USM") involving the construction of a building known as University Commons.  AIG SMF ¶ 4; Plaintiffs' Responsive SMF ¶ 4; Plaintiffs' SMF ¶ 1; AIG Responsive SMF ¶ 1.  Wright-Ryan entered into a written subcontract with Norgate to fabricate, provide, and erect the structural steel for this building.  AIG SMF ¶ 5; Plaintiffs' Responsive SMF ¶ 5; Plaintiffs' SMF ¶ 8; AIG Responsive SMF ¶ 8.  The subcontract agreement between Wright-Ryan and Norgate stated that "the scope of the Subcontract Work shall consist of all work necessary or incidental to

4

complete the structural steel work" for the USM job and required Norgate to procure and maintain in force, with respect to the USM job, commercial general liability insurance in the amount of $2 million, with Wright-Ryan named as an additional insured on the policy. Plaintiffs' SMF ¶¶ 13-14; AIG Responsive SMF ¶¶ 13-14.

Norgate hired Tri-Town Steel Erectors, Inc. ("Tri-Town") to erect structural steel on this building. AIG SMF ¶ 6; Plaintiffs' Responsive SMF ¶ 6. On July 24, 2007, Patrick Richter, Wright-Ryan's senior project manager on the USM job, sent a letter to Richard Gilbert, president of Norgate, putting Norgate on notice that the steel erection on the USM job had fallen behind schedule. Plaintiffs' SMF ¶¶ 9,[1] 24; AIG Responsive SMF ¶¶ 9, 24. On August 6, 2007, Gilbert sent an e-mail to Thomas Frederick at Wright-Ryan, stating that Norgate would supplement Tri-Town's crew with ironworkers from Entreprises Precision, Inc. ("Entreprises"). *Id*. ¶ 25.[2] Shortly thereafter, six ironworkers employed by Entreprises, including Thomas Behrens, reported to work on the steel erection at the USM job, and thereafter worked alongside Tri-Town's ironworkers. *Id*. ¶ 26.

On or about August 20, 2007, Behrens was injured when he fell through an unguarded stair opening at the construction site. AIG SMF ¶ 7; Plaintiffs' Responsive SMF ¶ 7. Behrens was employed by Entreprises at the time of the accident. *Id*. ¶ 8. On or about March 3, 2008, Behrens filed a suit against Wright-Ryan in Cumberland County Superior Court. *Id*. ¶ 13. On April 2, 2008, Wright-Ryan's attorney sent a letter to Norgate and AIG's corporate predecessor,

---

[1] AIG objects to paragraph 9 of the plaintiffs' statement of material facts on the grounds that it is supported by a citation to a deposition that was taken in the underlying state-court case, which it apparently contends is not part of the record in this case. AIG's Responsive SMF ¶ 9. It cites no authority for its position. The authority in this district is to the contrary. *Burbank v. Davis*, 227 F.Supp.2d 176, 178-79 (D. Me. 2002). *See also, e.g., Joseph v. ICG Castings, Inc.*, No. 1:07-cv-541, 2008 WL 5110550 (W.D. Mich. Dec. 2, 2008), at *5 n.4; *Jordan v. Miller*, No. 2:06-cv-0769, 2008 WL 213889 (S.D. Ohio Jan. 24, 2008), at *2. AIG's objection is overruled. AIG also asserts that this paragraph offers only information that is irrelevant. I refer to this paragraph only to establish that Gilbert was Norgate's president, a necessary background fact. The relevance objection is overruled to that extent.
[2] AIG's objection to this paragraph based on relevance, AIG Responsive SMF ¶ 25, is overruled.

enclosing a copy of Behrens' complaint and tendering the defense of the Behrens lawsuit. Plaintiffs' SMF ¶ 29; AIG Responsive SMF ¶ 29.  Prior to the filing of the instant action on December 3, 2008, neither Norgate nor AIG (nor its corporate predecessor) responded to Wright-Ryan's April 2, 2008 letter.  *Id*. ¶ 30.  Since then, AIG's only response has been to deny that its policy covers Wright-Ryan.  *Id*.

Behrens filed a second amended complaint in the state-court action on or about August 13, 2008.  AIG SMF ¶ 9; Plaintiffs' Responsive SMF ¶ 9.  This iteration of the complaint added Norgate, which had been a third-party defendant, as a direct defendant.  *Id*.

The second amended complaint alleged, *inter alia*, that on or about August 20, 2007, employees of Wright-Ryan and/or Tri-Town had ordered employees of Entreprises to stop placing any fall protection around open stairwells on all levels of the unfinished building.  *Id*. ¶¶ 10, 16.  It also alleged that, at that time, employees of Wright-Ryan and/or Tri-Town had told employees of Entreprises that they would place proper fall protection around the open stairwells on the second, third, and fourth levels of the building.  *Id*. ¶¶ 11, 17.  It alleges that Behrens was injured as a direct result of the negligence of Wright-Ryan and Tri-Town.  *Id*. ¶ 12.

Specifically, the second amended complaint alleged that Behrens, after completing a bolting project, stepped down from a ladder, lost his balance, and fell through an open stairwell. *Id*. ¶ 18.  Paragraph 18 of the second amended complaint listed the specific ways in which Wright-Ryan and its employees were allegedly negligent in connection with this incident.  *Id*. ¶ 20.  Wright-Ryan is not a named insured under the AIG policy.  *Id*. ¶ 21.

On or about May 9, 2007, a certificate of insurance was issued to Wright-Ryan adding Wright-Ryan as an additional insured under the AIG policy.  *Id*. ¶ 24.  At all relevant times, Wright-Ryan was insured by Acadia Insurance Company, a Maine company, under a CGL

policy number CPP 0000634-24 with an effective date of February 24, 2007. *Id.* ¶ 25; Plaintiffs' SMF ¶ 2; AIG Responsive SMF ¶ 2. The limit of liability coverage under this policy was $1 million. AIG SMF ¶ 28; Plaintiffs' Responsive SMF ¶ 28. Acadia Insurance Company hired defense counsel and provided Wright-Ryan with a defense in the action brought by Behrens. *Id.* ¶ 26. Acadia did not issue a reservation of rights letter to Wright-Ryan. *Id.* ¶ 30. Acadia has paid over $40,000 in attorney fees and other defense costs to date. Plaintiffs' SMF ¶ 34; AIG Responsive SMF ¶ 34.

On or about April 13, 2009, Acadia agreed to pay the sum of $150,000 to Behrens in full and final settlement of all of his claims against all defendants in the state-court action, including Wright-Ryan. AIG SMF ¶ 27; Plaintiffs' Responsive SMF ¶ 27.

### III. Discussion

There is no dispute that Wright-Ryan was added as an additional insured under the AIG policy at issue. AIG SMF ¶ 24; Plaintiffs' Responsive SMF ¶ 24. The instant dispute centers on the language of Endorsement No. 5 to the policy, which provides that additional insureds are added "only in respect of liability arising out of the Named Insured's premises or operations." *Id.* ¶ 22. Norgate was the named insured on this policy. *Id.* ¶ 2. The plaintiffs, not surprisingly, argue that this language extends coverage to Wright-Ryan for its own negligence, so long as that negligence arose out of Norgate's operations at the USM site. Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Motion") (Docket No. 27) at 7-10. AIG suggests that the coverage does not extend to Wright-Ryan's own negligence and that, even if it does, the underlying complaint did not allege that Behrens's injuries arose out of Norgate's operations.[3]

---

[3] Under Maine law, which the parties agree is applicable to the claims in this case, *see also Walker v. Unum Life Ins. Co. of Am.*, 530 F.Supp.2d 351, 353 (D. Me. 2008), in which the plaintiffs seek, *inter alia*, a declaration that AIG was obligated to provide Wright-Ryan with a defense in the underlying state suit, Second Amended Complaint (Docket No. 18) at 5, an insurer's duty to defend is decided by comparing the allegations in the underlying

7

Defendant/Counterclaim Plaintiff's Motion for Summary Judgment ("AIG Motion") (Docket No. 29) at 9-12.  The parties also disagree on the question of whether the AIG policy was primary or excess coverage for the Behrens incident.

### A.  Wright-Ryan's Negligence

Both sides of this dispute appear to agree that the operative complaint in the state-court action alleged negligence only by Wright-Ryan or one or more of its employees.  AIG contends that this means that Behrens's injuries could not have arisen out of the operations of Norgate, the policy holder.  AIG Motion at 8-9.  I will first address the issue of coverage for Wright-Ryan's own negligence.

In *Boise Cascade Corp. v. Reliance Nat'l Indem. Co*., 129 F.Supp.2d 41 (D. Me. 2001), a case that concerned insurance coverage for an underlying lawsuit, Judge Carter of this court construed policy language under which an additional insured alleged it was provided with coverage.  The relevant policy language provided coverage to an additional insured "limited to their liability for the conduct of the named insured."  *Id*. at 47 n.5.  Judge Carter held that the additional insured was not entitled to coverage under the policy for injury arising out of its own acts or omissions.  *Id*. at 48.  The policy language in *Boise Cascade* was quite different from that at issue here, where the relevant language provides that coverage for an additional insured is limited to "liability arising out of the Named Insured's premises or operations."  Plaintiffs' SMF ¶ 22; AIG Responsive SMF ¶ 22.

The distinguishing language is crucial here.  As courts applying the law of various other states with similar rules of policy construction have held, the language in the AIG policy must be read to provide coverage to Wright-Ryan under the circumstances of this case.  *See, e.g.*, *Mid-*

---

complaint with the provisions of the insurance policy to determine whether the complaint shows a possibility that the liability claim falls within the insurance coverage.  *Gibson v. Farm Family Mut. Ins. Co*., 673 A.2d 1350, 1352 (Me. 1996).

*Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 496-98 (5th Cir. 2000) (Texas law);

*McIntosh v. Scottsdale Ins. Co.*, 992 F.2d 251, 254-55 (10th Cir. 1993) (Kansas law; citing cases

from Pennsylvania, Illinois, and New York).

### B. "Arising Out Of"

Norgate's "premises" are not involved in this case, but its "operations" at the USM site

are at the center of this dispute. According to AIG, the fact that the underlying complaint alleges

only that Wright-Ryan is liable due to its own negligence, rather than that of Norgate, means that

there is no coverage for Wright-Ryan under its policy. This reading of the policy language, for

which no authority is cited, AIG Motion at 9-10, treats it as being identical to the *Boise Cascade*

language, which specifically limited coverage for the additional insured to instances in which it

bears vicarious liability for the negligence of the named insured. I have already concluded that

the language of the two policies is distinguishable on this very point and therefore reject AIG's

argument on this point. *See also Vitton Constr. Co. v. Pacific Ins. Co.*, 110 Cal.App.4th 762,

767-68, 2 Cal.Rptr.3d 1, 6 (2003) ("[T]he fact that an accident is not attributable to the named

insured's negligence is *irrelevant* when the additional insured endorsement does not purport to

allocate or restrict coverage according to fault." Emphasis in original.).

The policy itself apparently provides no definition of the phrase "arising out of"; at least,

the parties have not cited any such definition. Maine law provides that the phrase is to be given

an expansive reading when it appears in an insurance policy. *Acadia Ins. Co. v. Vermont Mut.*

*Ins. Co.*, 2004 ME 121, ¶ 8, 860 A.2d 390, 393 (citing with approval First Circuit definition

"originating from, growing out of, flowing from, incident to or having connection with"). Given

this definition, it is clear to me that Behrens's injury, and Wright-Ryan's liability for it, arose out

of Norgate's operations at the USM job site. Wright-Ryan entered into a subcontract with

Norgate to fabricate, provide, and erect the structural steel on this project. AIG SMF ¶ 5; Plaintiffs' Responsive SMF ¶ 5. Norgate issued a purchase order to Tri-Town for the erection of the structural steel and floor decking on this project. *Id*. ¶ 6. Behrens, an ironworker employed by Entreprises, worked on the steel erection at this project after Norgate informed Wright-Ryan that it would supplement Tri-Town's crew with ironworkers from Entreprises. *Id*. ¶¶ 25-26. Behrens was injured while working on this project. Wright-Ryan's liability to Behrens could only have grown out of, flowed from, or been incident to Norgate's operations at the USM site. *See generally Merchants Ins. Co. of N. H. v. United States Fidelity & Guar. Co*., 143 F.3d 5, 8-10 (1st Cir. 1998) (Massachusetts law).

### C. Sufficiency of Allegations

AIG focuses much of its memorandum of law on its contention that the underlying complaint does not allege that Wright-Ryan's liability "in any way arises out of the operations of" Norgate, that Norgate "was performing operations . . . in the vicinity of the Behrens[] accident," or that Behrens's injuries "arose out of the 'fabrication, supply or erection' of structural steel by Norgate." AIG Motion at 9-10. This argument is based upon too narrow a reading of the requirements of Maine law concerning the construction of coverage language in a liability insurance policy when duty to defend is at issue.

None of the case law cited by AIG, assuming that it comes from jurisdictions that have case law similar to that of Maine, compels a conclusion that AIG had no duty to defend Wright-Ryan in the underlying case at issue here. In *Worth Constr. Co. v. Admiral Ins. Co.*, 10 N.Y.3d 411, 888 N.E.2d 1043 (N.Y. App. 2008), the injured employee admitted that his claims against the general contractor, an additional insured, were without factual merit, and the court accordingly found that there was no connection between his accident and the risk for which

coverage was intended. *Id.* at 414-16.  In *L.J. Dodd Constr., Inc. v. Federated Mut. Ins. Co.*, 365 Ill.App.3d 260, 848 N.E.2d 656 (2006), the policy at issue excluded coverage for injuries that arose from the additional insured's "sole negligence," and, since the underlying complaint did "not allege that [the injured worker] was injured as a result of the [named insured's] ongoing operations" and did "not even mention [the named insured]," there was "no potential for coverage," presumably because there was no suggestion that the injury resulted from anything other than the additional insured's sole negligence.  365 Ill.App.3d at 261-63, 848 N.E.2d at 657-59.  There is insufficient discussion of this conclusion in the opinion to allow the reader to determine how the conclusion was reached.   The allegations in the underlying state-court complaint in this case are more extensive than those at issue in *Dodd*.  *See* Plaintiff's Second Amended Complaint, *Thomas V. Behrens v. Wright-Ryan Construction, Inc.*, Maine Superior Court (Cumberland County) Docket No. CV-08-125 (Exhibit A to Affirmative Defenses and Answer (Docket No. 7)).

In *A.F. Lusi Constr. Co. v. Peerless Ins. Co.*, 847 A.2d 254 (R.I. 2004), the court held that the plaintiff was not an additional insured under the policy at issue, *id*. at 259, so any discussion of the issue for which AIG cites it was *dictum*.  In *Pro Con Constr., Inc. v. Acadia Ins. Co.*, 147 N.H. 470, 794 A.2d 108 (2002), the injury occurred while the named insured's employee was walking from his work area to a coffee truck.  147 N.H. at 471, 794 A.2d at 109. The court held that the employee was not engaged in any task related to the named insured's operations at the site, and, based on the policy language, there was thus no causal connection between the injuries and the named insured's operations.

11

Each of the cases cited by AIG is thus distinguishable.  AIG is not entitled to summary judgment on the basis of any of its arguments that I have considered to this point.[4]

### D.  "Other Insurance," Primary, and Excess Insurance

AIG moves on to contend that, if there is potential coverage for Wright-Ryan under the circumstances of this case, it nonetheless had no duty to defend Wright-Ryan in the underlying case because the "other insurance" clause in the policy "provides explicitly that the AIG policy is excess over any other primary insurance available" and the Acadia policy was just such primary insurance.  AIG Motion at 12-13.  The policy provision at issue provides, in relevant part:

> If other valid and collectible insurance is available to the insured for a loss we cover . . ., our obligations are limited as follows:
>
> #### a.  Primary Insurance
> This insurance is primary except when b. Excess Insurance, below, applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in c. Method of Sharing, below.
>
> #### b.  Excess Insurance
> This insurance is excess over:
> (1)  Any of the other insurance, whether primary, excess, contingent or on any other basis:
>    (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";
> * * *
> (2)  Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.
> When this insurance is excess, we will have no duty . . . to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." . . .
> When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

---

[4] The plaintiffs also argue that the additional insured endorsement of the policy at issue is unambiguous but, if ambiguous, must be construed against AIG.  Plaintiffs' Motion at 13.  AIG does not take issue with this argument.

> **(a)**  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
> **(b)**  The total of all deductible and self-insured amounts under all that other insurance.
> We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Policy.
>
> **c.  Method of Sharing**
> If all of the other insurance permits contribution by equal shares, we will follow this method also. . . .
> If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.

AIG SMF ¶ 23; Plaintiffs' Responsive SMF ¶ 23.

AIG relies solely on this language, without citation to authority, to support its assertion that "there is no obligation to defend where there is other primary insurance available to defend the additional insured."  AIG Motion at 12.  But the matter is not so simple.

Wright-Ryan's Acadia policy also has an "other insurance" clause.  It provides, in relevant part:

> **a.  Primary Insurance**
> This insurance is primary except when **b.** below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in **c.** below.
>
> **b.  Excess Insurance**
> This insurance is excess over:
> * * *
> (2)  Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.
> * * * *
> When this insurance is excess, we will have no duty . . . to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

>When this insurance is excess over other insurance, we will pay only our
>share of the amount of the loss, if any, that exceeds the sum of:
>    (1)  The total amount that all such other insurance would pay for the
>loss in the absence of this insurance; and
>    (2)  The total of all deductible and self-insured amounts under all that
>other insurance.

Policy No. CPP 0000634-24 (Exhibit A to Affidavit of Thomas Frederick (Attachment H to

Plaintiffs' SMF)), Commercial General Liability Coverage at 11.

The plaintiffs assert, also without citation to authority, that this language makes the

Acadia policy excess with respect to the Behrens claim.  Plaintiffs' Motion at 14.  They also

contend that, because Norgate is not an additional insured on the Acadia policy, it is not

available to Norgate, so it cannot be primary insurance for Norgate, the named insured under the

AIG policy.  *Id*. at 15.  AIG argues, of course, that it is the availability of the Acadia policy to

Wright-Ryan, an additional insured under its policy, not to Norgate, that governs this issue.   The

dispute comes down to the question of whether "you" in the AIG policy refers to Wright-Ryan,

an additional insured, as well as to Norgate, the named insured.

The AIG policy defines "you" as follows:

>    Throughout this policy the words "you" and "your" refer to the
>Named Insured shown in the Declarations, and any other person or
>organization qualifying as a Named Insured under this policy.

Defendant AIG's Statement of Additional Material Facts ("AIG Second SMF") (included in AIG

Responsive SMF beginning at 12) ¶ 19; Plaintiffs' Reply Statement of Material Facts

("Plaintiffs' Second Responsive SMF") (Docket No. 41) ¶ 19.[5]  AIG wants the court to assume

that an additional insured is also a Named Insured under its policy.  AIG Motion at 12;

---

[5] The parties differ on the exact wording of this passage from that policy: AIG says that the second noun is "term," the word "Declarations" is singular, and the penultimate word is "the."  AIG Second SMF ¶ 19.  I have used the language from the policy, Commerce & Industry Insurance Company of Canada/Commercial General Liability Policy ("AIG Policy") (Exhibit B to Affirmative Defenses and Counterclaim) at 3, but I do not find the differences significant.

14

Defendant/Counterclaim Plaintiff's Opposition to Plaintiffs/Counterclaim Defendants' Motion for Summary Judgment (Docket No. 36) at 17-18. The plaintiffs want the court to assume that the term "Named Insured" does not include additional insureds. Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Docket No. 34) at 15-17. *See, e.g., Allegheny Airlines, Inc. v. Forth Corp.*, 663 F.2d 751, 758-59 (7th Cir. 1981) (where policy declarations page included reference to additional insured under heading "named insured," additional insured was included in all references to named insured). Neither side suggests why the court should make either assumption.[6] The only "Named Insured" identified on the cover page of the policy is Norgate. AIG Policy at 1. I found no other definition of the term in the policy.

Under these circumstances, applicable First Circuit authority supports AIG's position. In *Wyner v. North Am. Specialty Ins. Co.*, 78 F.3d 752 (1st Cir. 1996), a commercial tenant that carried insurance for property damage filed for bankruptcy, and its landlord filed a declaratory judgment seeking to recover for damage to the leased property. *Id*. at 753. The landlord was included as an "additional insured" on the policy. *Id*. at 755. The policy included a specific exclusion for damage to property "'you own," and defined "you" as "the Named Insured shown in the declarations, and any other person or organization qualifying as a Named Insured under this policy." *Id*. at 757. The tenant was the "Named Insured" identified in the policy. *Id*. at 755. Under Massachusetts law, "[t]he naming of additional insureds does not extend the nature of the substantive coverage originally given by the policy but merely gives to other persons the same protection afforded to the principal insured." *Id*. at 756 (citation omitted). The First Circuit held:

---

[6] It is possible to insert language into an insurance policy to address this issue, *see Horner Millwork Corp. v. U. S. Fire Ins. Co.*, 2009 WL 2032102 (D.R.I. July 10, 2009), at *3-*4, but the AIG policy at issue in this case does not appear to include such language.

> Where, as here, the endorsement naming the additional insured contains no language suggesting that the nature of coverage, declarations or exclusions were thereby altered, we see no reason to deviate from the well-settled rule that the policy does not extend any greater coverage to an additional insured.

*Id.* (citation and internal punctuation omitted).  The First Circuit also stated: "[t]he ordinary and common reading of the language . . . would be to find that 'you' and 'your' were defined as the Named Insured not to draw a distinction between [the tenant] and the Landlords, but between [the tenant] and [the insurer]."  *Id.* at 757.

In this case, where the language of the definitions is identical, and Maine law does not appear to differ significantly from that of Massachusetts,[7] *Wyner* requires this court to conclude that the excess insurance clause of the AIG policy applies to Wright-Ryan, the additional insured, as well as to Norgate, the named insured.  *But see Alexander v. National Fire Ins. of Hartford*, 2005 WL 139083 (E.D.Pa. Jan. 19, 2005), at *2   (additional insureds not subject to excess clause because policy defines "you," which is used in that clause, as the named insured; no discussion of issue or citation to case law).

The plaintiffs contend that the distinction between named insureds and additional insureds "is a distinction understood and applied by all of the courts that have dealt with additional insured exclusions," citing single decisions by the Maine Law Court, this court, and the First Circuit.  Plaintiffs' Reply Memorandum of Law in Support of Their Motion for Summary Judgment (Docket No. 39) at 8.  However, the cited cases do not support the plaintiffs' premise and, even if they did, are readily distinguishable.

---

[7] The *Wyner* court refers to the "well established" precept of Massachusetts law that "general rules of contract construction apply to the interpretation of an insurance policy."  78 F.3d at 754.  Under Maine law, "[i]nsurance policies are contracts, and are construed in accordance with the intent of the parties."  *Gilbert v. Gilbert*, 2002 ME 67, ¶ 18, 796 A.2d 57, 61.

In *Endre v. Niagara Fire Ins. Co.*, 675 A.2d 511(Me. 1996), an individual named as an additional insured in a corporate liability policy sought a declaratory judgment before the tort claim against him proceeded to trial that he was entitled to a defense from the insurer. The trial court held that the work done by the individual defendant was not "by or for" the corporation and thus the corporation's insurer had no duty to defend the individual who was an additional insured "only with respect to liability arising out of your work for [the insured]." *Id*. at 512-13 (internal punctuation omitted). The Law Court held that the allegations in the underlying complaint could come within the policy's definition of "your work" and thus found a duty to defend. *Id*. at 513. This is a completely different question from that presented in this case.

In *Seaco Ins. Co. v. Davis-Irish*, 180 F.Supp.2d 235 (D. Me. 2002), an employee injured in the course of her employment while a passenger in a privately-owned automobile sought to recover under a policy issued to her employer covering a single vehicle that was out of service at the time of the accident. *Id*. at 236. Judge Hornby held that, "[b]y any ordinary use of the language," the word "you" in the policy's definition of "who is an insured" could "only be reasonably understood as referring to" the corporate employer and not to its employees. *Id.* There is no suggestion in this opinion that the employee was explicitly made an "additional insured" by the policy; indeed, the contrary is true.

Finally, the First Circuit on appeal held that the definition of "you" in the policy at issue was not ambiguous and "affirm[ed] the district court's judgment for substantially the reasons elucidated in that court's thoughtful opinion." *Seaco Ins. Co. v. Davis-Irish*, 300 F.3d 84, 86 (1st Cir. 2002).

Neither side contends that the excess insurance clauses of the AIG and Acadia policies are mutually exclusive, so that AIG would be required to pay half the costs of Wright-Ryan's

17

defense and settlement in the state-court case.   Accordingly, AIG is entitled to summary judgment on Count I of the Second Amended Complaint ("Complaint") (Docket No. 18), which seeks a declaratory judgment that AIG had a duty to defend and indemnify Wright-Ryan in the state-court action.   Because the Acadia insurance was primary, and its limits exceeded the $40,000 in attorney fees and costs and $150,000 settlement, AIG SMF ¶ 28; Plaintiffs' Responsive SMF ¶ 28, AIG has no liability.

### E.  Count II (Breach of Contract)

AIG also seeks summary judgment on the remaining counts of the plaintiffs' second amended complaint.   AIG Motion at 14-16.   The plaintiffs do not respond to this portion of AIG's motion, Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Docket No. 34).   The court must nonetheless address the merits of the motion on this count.   *Vélez v. Awning Windows, Inc.*, 375 F.3d 35, 42 (1st Cir. 2004).

The only substantive allegation in this count of the plaintiffs' second amended complaint is that AIG breached its insurance contract with Wright-Ryan by refusing to defend and indemnify Wright-Ryan in the state-court action.   Complaint ¶ 25.   Because I have concluded that AIG had no such duty under the applicable insurance policy, it cannot have been bound by any contractual obligation in that policy, and it is thus entitled to summary judgment on this count as well.

I note in addition that, as AIG contends, AIG Motion at 15, there is no evidence in the summary judgment record to support a claim by Wright-Ryan for attorney fees and other costs of defense in the underlying state-court action in any event.   The record evidence is that Acadia paid all of these costs.   Plaintiffs' SMF ¶ 34; AIG Responsive SMF ¶ 34.   Similarly, the record reveals that Acadia paid the $150,000 that Behrens accepted in settlement of that case.   AIG

18

SMF ¶ 27; Plaintiffs' Responsive SMF ¶ 27.  AIG is entitled to summary judgment on this basis against Wright-Ryan independent of the fact that it is entitled to summary judgment on Count I.

Further, there is no evidence in the summary judgment record of any contract between Acadia and AIG which AIG could have breached.  AIG is entitled to summary judgment on Count II against Acadia for this reason as well.

## F.  Count III (Statutory Violation)

Count III of the second amended complaint, asserted only by Wright-Ryan, alleges that AIG violated 24-A M.R.S.A. § 2436-A in four specific ways.  That statute deals with unfair claims settlement practices by insurers.  My conclusion that the AIG policy was excess insurance as to Wright-Ryan and therefore provided no coverage for any of Behrens's claims against Wright-Ryan under the circumstances means that AIG cannot be liable to Wright-Ryan under this statute.

In addition, as AIG points out, AIG motion at 16-17, Wright-Ryan did not pay any damages to Behrens.  The record shows that only Acadia did so.  Wright-Ryan thus was not injured by any of AIG's allegedly wrongful actions and does not have a claim against it under the statute in any event.

## G.  AIG's Counterclaims

AIG has brought counterclaims against Wright-Ryan and Acadia, seeking declaratory relief to the effect that it is not required to defend or indemnify Wright-Ryan nor to indemnify Acadia under the terms of the insurance policy at issue.  Affirmative Defenses, Answer to Second Amended Complaint, Counterclaim against Wright-Ryan Construction, Inc., and Counterclaim Against Acadia Insurance company (Docket No. 19) at 6-10.  For the reasons discussed above, I recommend that AIG's cross-motion for summary judgment be granted.

19

## IV.  Conclusion

For the foregoing reasons, I recommend that the plaintiffs' motion for summary judgment (Docket No. 27) be **DENIED** and that the defendant's motion for summary judgment (Docket No. 29) be **GRANTED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 27th day of November, 2009.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge